Respondent-appellant, Tammy Hiles, appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her two daughters to the Clermont County Department of Human Services ("CCDHS"). We affirm.
Tiffani Hiles, born on December 30, 1994, and Jennifer Hiles, born on April 4, 1997, are the natural children of appellant and her husband, Wade Hiles ("Hiles"). On August 22, 1997, CCDHS filed a complaint alleging that Tiffani and Jennifer were neglected children. On September 15, 1997, interim custody was granted to CCDHS due to filthy home conditions, chronic lice infestation, and domestic violence. On September 16, 1997, counsel was appointed to represent Hiles and appellant jointly. A dispositional hearing was held on December 2, 1997, and the magistrate granted temporary custody of Tiffani and Jennifer to CCDHS.
On February 2, 1998, counsel for appellant and Hiles filed a motion to withdraw on the ground that the parties' interests had diverged. The trial court granted leave on February 11, 1998 for counsel to withdraw. At some point thereafter, appellant and Hiles individually requested that counsel be appointed for each of them due to their indigency. On March 19, 1998, Joy Albi, Esq., was appointed to represent appellant, but the court denied Hiles' request, finding that he earned too much to qualify for court-appointed counsel.
On April 7, 1998, CCDHS filed for permanent custody. On June 23, 1998, a hearing was held at which the magistrate found that the children could not be placed with either of their parents within a reasonable time. On July 16, 1998, a hearing was held to determine the children's best interest. On July 30, 1998, the magistrate issued his decision that the children's best interest would be served by granting permanent custody to CCDHS. On October 20, 1998, the trial court overruled appellant's objections and adopted the magistrate's decision in its entirety. Appellant filed this appeal, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT VIOLATED THE RESPONDENT'S RIGHT TO COUNSEL AND THEREBY PREJUDICED THE RESPONDENT-APPELLANT.
Under this assignment of error, appellant argues that even though the court appointed Albi to represent her, she was prejudiced because the trial court declined to appoint counsel for Hiles.
Generally, a party is permitted to appeal a decision only when the party has been aggrieved by the decision. In reGuardianship of Love (1969), 19 Ohio St.2d 111, 113. Such a party must show that they have been prejudiced by the judgment of the lower court. Id. A party is aggrieved by a decision when the party has suffered loss as a result of the decision. Warren v.Cincinnati (1959), 113 Ohio App. 254, 257.
We note that Hiles has not appealed the lower court's decision. Instead, appellant has appealed arguing that failure to appoint counsel for Hiles resulted in prejudice to her. The Sixth District Court of Appeals has held that "[a]n appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." In reSmith (1991), 77 Ohio App.3d 1, 13, citing State v. Ward (Sept. 21, 1988), Summit App. No. 13462, unreported. Therefore, according to Smith, appellant must establish the following two criteria: (1) that the trial court's decision to deny counsel to Hiles was erroneous, and (2) that the error was prejudicial to her rights. See Smith at 13. See, also, In the matter of MatthewJohnson (Nov. 30, 1990) 1990 Ohio App. LEXIS 5191, *18.
The record reveals that the parties remained married throughout the entire proceeding. However, the record does not clearly establish whether the parties were separated at the time the trial court made its determination of indigency, or whether the parties were still living together, sharing all assets and expenses out of their marital funds. In the absence of a clear record on this point, we are unable to make a determination underSmith's first criterion whether the trial court's determination that appellant was indigent while Hiles was not constituted error.
We are able to determine from the record that appellant has failed to establish the second criterion under Smith, that she was prejudiced by the trial court's decision. Appellant makes a general assertion that "the lack of counsel for Mr. Hiles created the impossibility of a fair adjudication for Mrs. Hiles." Appellant has not identified any specific way in which she was prejudiced. The Eighth District Court of Appeals addressed a similar situation in In re Michael Woodworth, Jr. (Dec. 10, 1992), 1992 Ohio App. LEXIS 6269, unreported. In Woodworth, the court stated that "appellant's speculative claim of injury cannot provide her with standing to claim that [her husband] was denied his right to counsel." Woodworth at *7-8.
As discussed under appellant's third assignment of error, the evidence upon which the trial court based its grant of permanent custody was overwhelming. This evidence was properly admitted and would have been admissible whether Hiles was represented by counsel or not. We find that appellant's claim under this assignment of error is founded upon speculation and fails to demonstrate how she suffered prejudice as a result of the trial court's decision. Therefore, appellant has failed to make the threshold showing to establish that she has standing to bring this claim on appeal. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE COURT ERRED TO THE PREJUDICE OF THE RESPONDENT BY DENYING A MOTION FOR A SEPARATE PSYCHOLOGICAL EVALUATION.
In November of 1997, by court appointment, Dr. Joseph V. Cresci, Jr. conducted a psychological evaluation of appellant and Hiles. On May 1, 1998, appellant filed a motion for a second, court-provided psychological evaluation. The court denied this request. Appellant argues that at the first evaluation, conducted in tandem with Hiles, there was too much risk of inaccuracy due to Hiles' ability to manipulate appellant and influence her responses.
This court has previously stated that R.C. 2151.53 and Juv.R. 32 permit a juvenile court to order a mental examination at any time after the filing of a complaint. In the Matter of: TonyaPant (Feb. 29, 1988), Clermont App. No. CA87-05-039, unreported. "Examination under these sections is discretionary, and there is no obligation imposed upon the trial court to grant such a request upon such motion." Id. at 7. Our review of the record indicates that the initial court-ordered evaluation of the parties provided an adequate basis for the trial court to make its determination. We find that the court's denial of appellant's motion for an additional evaluation was not an abuse of discretion. Appellant's second assignment of error is overruled.
Assignment of error No. 3:
 THE TRIAL COURT LACKED SUFFICIENT EVIDENCE TO DETERMINE THAT THE CHILDREN COULD NOT BE PLACED WITH THEIR PARENTS IN A REASONABLE PERIOD OF TIME.
Under this assignment of error, appellant argues that CCDHS failed to present sufficient evidence to meet the clear and convincing quantum of proof required by the statute.
The court may not award permanent custody unless the court determines by clear and convincing evidence that it is in the best interest of the child and that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(B) (1). In determining whether a child cannot placed with the parents within a reasonable time or should not be placed with the parents, the court must consider all relevant evidence, and the enumerated factors outlined in R.C.2151.414(E). The factors to consider under R.C. 2151.414(E) include:
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child * * *;
* * *
 (10) The parent has committed abuse as described in section 2151.031 [2151.03.1][1] of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03[2] of the Revised Code and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety;
* * *
(12) Any other factor the court considers relevant.
The evidence considered by the trial court included the testimony of Dr. Cresci. Dr. Cresci stated that appellant suffered from several emotional and psychological difficulties, including chronic depression, anger, being easily frustrated, and serious cognitive limitations. Dr. Cresci further stated that appellant was detached, very fearful, and insecure to the point that she lacked the ability to parent properly.
Anna Stark, a social worker who conducted therapy sessions with appellant and Hiles, testified that she was concerned about incidents of domestic violence committed by Hiles against appellant. Stark also counseled Hiles regarding sexual abuse he had previously committed against his sister. During his late teenage years, Hiles molested his sister, and his parents sent him to another state to receive treatment. Stark expressed concern that Hiles had no plan in place to prevent a relapse or to identify what kind of "triggers" he could recognize within himself to indicate when a relapse was likely to occur.
Opal Anderson, a CCDHS caseworker, testified that in January 1998 she was supervising a visit which appellant and Hiles had with Tiffani and Jennifer. Anderson was observing through a two-way mirror, and near the end of the visit, she saw Hiles with Jennifer standing on his lap. Anderson testified that Hiles turned his chair so that his back was to appellant. Hiles began swaying Jennifer back and forth, and Anderson observed appellant stick his tongue inside the baby's mouth.
Kim Carmen, a CCDHS caseworker, testified that appellant and Hiles had visited the children regularly and had substantially complied with the case plan. Carmen stated that although there had been physical compliance with the case plan, there had been few favorable outcomes. Carmen also stated that during the December 22, 1997 visit, she observed Hiles playing with Jennifer by throwing her into the air. At one point, Hiles turned his back to appellant, pulled the baby close, and while her mouth was open from laughing, Carmen observed Hiles stick his tongue in and out of the baby's mouth. Carmen also stated that appellant expressed no plans to separate from Hiles and that the parties' home was cluttered, had a roach problem, and had a very foul odor. Carmen further stated that when the children were removed from the home, they were infested with lice.
Brian Lovins, a sex offender and domestic violence specialist with Clermont County Counseling Center, also testified. Lovins met with Hiles to discuss the two sexually inappropriate incidents that had occurred during visitation and to discuss Hiles' sexual abuse against his sister. Initially Hiles denied that he had done anything wrong. When further confronted with his inappropriate behavior, Hiles asked if he could be provided with a list of what is considered inappropriate sexual behavior. Lovins expressed concern that if permanent custody were not granted to CCDHS, Hiles would be in direct contact with his daughters without any realization of what constitutes appropriate or inappropriate behavior. Lovins testified that there was a high risk of future offense by Hiles.
Additional evidence presented at the hearing revealed that appellant has five other children which are currently in the custody of the state of Texas. The children were removed from appellant's custody after an incident where appellant allowed a known sex offender to stay in her home.
Based upon the foregoing, we find that there was clear and convincing evidence presented to support the trial court's determination that Tiffani and Jennifer could not be placed with either parent within a reasonable time or should not be placed with either parent. Appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] This section addresses sexually-abused children.
[2] This section addresses neglected children.