[Cite as *In re A.L.W.*, 2016-Ohio-911.]

STATE OF OHIO           )                    IN THE COURT OF APPEALS
                        )ss:                 NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT        )

IN RE: A.L.W.                                C.A. No.      27312
      A.L.W.
      A.L.W.

                                            APPEAL FROM JUDGMENT
                                            ENTERED IN THE
                                            COURT OF COMMON PLEAS
                                            COUNTY OF SUMMIT, OHIO
                                            CASE Nos.    DN 12-11-747
                                                         DN 12-11-749
                                                         DN 12-11-751

DECISION AND JOURNAL ENTRY

Dated: March 9, 2016

---

CARR, Presiding Judge.

{¶1}    Appellant A.W. (Father) appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division.  This Court dismisses the appeal.

I.

{¶2}    Father's three children (all with the initials A.L.W.) were in the legal custody of V.S. (Mother) when Summit County Children Services Board (CSB) filed complaints alleging that one child was abused, neglected, and dependent, and that the other two children were dependent.[1]  Father was incarcerated during the entire course of proceedings in the juvenile court case, as well as years before and after.

---

[1] Another child, L.H., is referenced in the juvenile case file.  A.W. is not that child's father.  Although L.H. was adjudicated dependent, there is no complaint in the record regarding that child.  The man identified as L.H.'s father did not participate in the proceedings below.  L.H. is not a subject of this appeal, and this Court declines to address any irregularities in regard to any matters involving that child.

{¶3} This matter presents a convoluted procedural history. CSB received an emergency order of temporary custody on the date the agency filed the complaints. At shelter care hearing, Mother stipulated to probable cause for removal of the children. Father was not present at shelter care, although the magistrate noted that he had been notified of the hearing by telephone in prison a week earlier. At shelter care, the magistrate appointed Attorney Tony Paxton to represent the father of a fourth child purportedly involved in the case and ordered that the court would appoint counsel for Father (the appellant herein), if he requested appointment of counsel in writing. Father filed a motion to set aside that magistrate's order and indicated his willingness to act in pro se capacity.

{¶4} Two weeks after the shelter care hearing, CSB moved to terminate temporary custody and return the children to Mother's legal custody with an order of protective supervision. The juvenile court granted that motion the same day. Father filed a pro se motion to set aside that magistrate's order, alleging that he had not been notified of the hearing and was not present. Father reiterated his willingness to act in a pro se capacity.

{¶5} At the adjudication hearing, Mother stipulated to a finding of dependency. The magistrate noted that, although Father had been served regarding the adjudication, he was not present. The magistrate appointed Attorney Tony Paxton to represent Father. Father filed an objection to the appointment, arguing conflict of interest as Attorney Paxton was representing the other father in the case. He requested that the court dismiss counsel and allow him to act pro se. He further objected to adjudication having taken place in his absence. The magistrate thereafter filed a "Magistrate's Notice" wherein she asserted that Attorney Paxton had only been provisionally appointed for the other father and that, failing the other father's completion of required financial documents, the attorney became available to represent Father. The juvenile

court judge ruled on Father's objections, noting that the magistrate's notice adequately addressed the issue regarding the appointment of counsel. The judge further "dismissed" the adjudication based on Father's absence and "continued" the adjudication hearing until a later date.

{¶6} Father attended the adjudication hearing by video. Attorney Paxton also appeared on Father's behalf. Mother and Father both stipulated to a finding of dependency pursuant to R.C. 2151.04(C) as to the children, and CSB dismissed the allegations of abuse, neglect, dependency pursuant to R.C. 2151.04(D). Father waived the 24-hour waiting period between adjudication and disposition, and the matter proceeded accordingly. The children were retained in Mother's legal custody under an order of protective supervision by CSB. In addition, based on Father's requests, the juvenile court granted Father an order of access to the children's school and medical records, ordered that Father shall be entitled to weekly (Wednesdays at 5:00 p.m.) telephone contact with the children at Father's expense, and reduced Father's current monthly child support obligation to $0, although the court did not negate his child support arrearages of approximately $45,000. The court scheduled a review hearing in May.

{¶7} Father filed the first of four documents captioned "Judicial Notice" in which he complained that he had not received a copy of the magistrate's decision regarding the adjudication/disposition. The decision was served on his attorney. Notwithstanding his representation by counsel, Father filed pro se objections to the decision, as well as a pro se motion for genetic testing. The juvenile court dismissed Father's objections and denied his motion upon concluding that they were not properly before the court as Father was represented by counsel.

{¶8} The magistrate conducted a review hearing on May 16, 2013. Father and his attorney were both present. On June 28, 2013, Attorney Paxton filed a motion to withdraw,

citing differences of opinion which were negatively impacting the attorney-client relationship. Ten days later, Father filed a pro se motion for contempt against Mother and her attorney (based on Father's alleged inability to have telephone contact with the children) and a motion for removal of counsel.

{¶9} The magistrate conducted a second review hearing on July 24, 2013. Father was not present and Attorney Paxton did not appear on his behalf. Father subsequently filed a "Judicial Notice" informing the court that prison staff did not facilitate his phone or video attendance at the review hearing. On August 16, Father filed a pro se objection regarding the second review hearing, arguing that the court abused its discretion if it allowed Attorney Paxton to speak on Father's behalf given the multiple requests Father had made for counsel's withdrawal. On August 20, Father filed a pro se motion to set aside/objections to whatever orders the magistrate might have issued out of the second review hearing. Father complained that he was not present for the hearing, had not received a copy of the order or decision, and did not know when he needed to file objections.

{¶10} In early October, Father filed another "Judicial Notice" and motion for conveyance, requesting that the juvenile court order the prison warden to allow Father to participate in a hearing scheduled for November 13, 2013. Father further complained that Attorney Paxton had not sent any decisions, orders, or journal entries to him and he again requested that the court discharge the appointed counsel and allow Father to proceed pro se.

{¶11} Also in October, CSB filed a motion to terminate protective supervision. The magistrate conducted a final dispositional hearing on November 13, 2013. Father was not present. Nor was he represented by counsel at the hearing. A week later, Father filed an objection to whatever decisions and orders the magistrate might have issued out of the

dispositional hearing. He asserted that he had learned on November 4, through correspondence from Attorney Paxton, that the attorney had withdrawn from further representation of Father in June. Father argued that the juvenile court was aware that he was no longer represented by counsel at the July review hearing but failed to "take the necessary procedures to ensure" Father's due process rights when it conducted the hearing in his absence.

{¶12} On December 6, 2013, the magistrate issued two orders from the May 16 and July 24 review hearings. The first order scheduled the second review hearing and the second order scheduled the final dispositional hearing. Both hearings had already occurred by the time these orders were issued. In the second order, the magistrate noted that neither Father nor Attorney Paxton was present, that the CSB caseworker had not had any contact with Father, and that Attorney Paxton had filed a motion to withdraw in mid-June. The magistrate granted the motion. On December 16, 2013, Father filed a motion to set aside both December 6 magistrate orders. He argued that the magistrate should have continued the July 24 review hearing to allow Father either to be present or to request counsel to represent his interests. Moreover, although the magistrate had not yet issued a decision from the November final dispositional hearing, Father asserted that the magistrate improperly conducted that hearing too in the absence of Father. Father appeared to argue for a rehearing.

{¶13} On December 17, 2013, the magistrate issued her decision from the final disposition. She noted that neither Father nor any attorney on his behalf was present, and that the CSB case worker had not had any contact with Father. The magistrate reviewed the testimony of the agency case worker regarding Mother's compliance with her case plan objectives and the stability in the home and found it credible. The juvenile court granted CSB's motion to terminate protective supervision pending a status hearing on December 18. The court

further ordered that visitation shall continue as previously ordered and that parents shall continue to pay all previously ordered child support. Father filed timely objections, arguing error based on his absence from the hearing, as well as the juvenile court's failure to rule on any of his pending motions and objections. In addition, although the magistrate had not yet issued her decision from the final status hearing, Father criticized the procedure and substance of that hearing. He was the only person in attendance at the hearing and complained that he was, therefore, precluded from cross-examining any parties or witnesses who testified at the November dispositional hearing. Specifically, he wished to cross-examine anyone who spoke regarding the status of his telephone visitation with the children. Father requested that the juvenile court keep the case open until all pending motions and objections had been resolved.

{¶14} On January 21, 2014, the magistrate issued her decision from the December 18 final status review hearing. She noted that only Father was present and that he (1) informed her that Mother was not facilitating telephone contact with the children; (2) renewed his request for the children's school and medical records, even though he had an order of access for those records; and (3) requested the appointment of a guardian ad litem for the children based on his belief that the children were being mistreated at home. The magistrate reiterated her findings regarding Mother's successful compliance with case plan objectives and ordered (1) termination of protective supervision, (2) that visitation shall continue as previously ordered and the Mother shall make the children available, (3) a referral to CSB to address Father's allegations regarding the care of the children, and (4) docketing of the matter as closed. Father filed timely pro se objections, requesting that the juvenile court rule on his outstanding motions and reinstate the "protect order" until a constitutional hearing could be held with all parties present.

{¶15} On March 17, 2014, the juvenile court purported to address all of Father's pro se motions and objections. Noting that the court had only granted appointed counsel's motion to withdraw on December 6, 2013, the juvenile court refused to consider Father's August 16 and 20, and November 20 motions/objections as they were not properly before the court because Father was represented by counsel as those times. Accordingly, the juvenile court only considered Father's December 16 and 31, 2013, and February 3, 2014 motions and objections, although it noted that all issues raised in the earlier three motions/objections were also raised in the latter three. Moreover, the court stated that it was constrained to address the pending motions/objections only through review of the case file and applicable law, as Father had not requested preparation of transcripts from any of the hearings. The juvenile court addressed the following issues:

Father's access to the children's records during his incarceration

{¶16} The juvenile court noted that Father had not subpoenaed the records. Moreover, because school and medical professionals were not parties to the case, the court asserted that it could not compel the release of those records. The juvenile court wrote that it did not possess the records and that CSB was precluded from re-releasing records due to HIPAA.[2] Finally, the court noted that Father acknowledged the concerns of school and medical professionals regarding the release of children's records to someone incarcerated with child offenders. The juvenile court overruled Father's objection relating to the release of records.

Father's absence from hearings

{¶17} The juvenile court noted that Father admitted that a prison employee interfered with his ability to attend the July 24, 2013 review hearing. The court then asserted that, as an

---

[2] The juvenile court referred to "HIPPA" which this Court construes to relate to the Health Insurance Portability and Accountability Act (HIPAA).

incarcerated parent does not have an absolute right to attend a permanent custody hearing, there is no absolute right to attend hearings regarding any less restrictive procedures. Citing *In re C.M.*, 9th Dist. Summit Nos. 23606, 23608, 23629, 2007-Ohio-3999, ¶ 14, the juvenile court applied the three-prong balancing test to determine whether Father's due process right to be present at all hearings was violated. ¶ 14.[3] Reasoning that the administrative burden was high, that it was unlikely that Father had any information determinative of the issues addressed at the review and dispositional hearings, and that Father was represented by appointed counsel, the juvenile court overruled Father's objection that the court denied him due process by proceeding with hearings in his absence.

Appointment of Guardian ad litem

{¶18} Father objected that the court failed to appoint a guardian ad litem for the children. The juvenile court cited Loc.R. 9.01(A)(1) and overruled Father's objection because there was no statutory requirement to appoint a guardian and the children's communications with service providers appropriately protected their best interest.

Father's contempt motion

{¶19} Father objected to the court's failure to hold Mother and her attorney in contempt based on his inability to have weekly telephone visitation with the children as ordered by the court. The juvenile court cited Loc.R. 5.05(C) and overruled Father's objection upon finding that Father's contempt motion was never properly before the court because it did not include the

---

[3] The right of an incarcerated parent to attend a permanent custody hearing is determined by balancing "(1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the governmental burden of additional procedural requirements." *C.M.* at ¶ 14, citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

requisite proposed order compelling the alleged contemnors' appearance and containing the necessary statutory language. Nevertheless, the juvenile court remanded the matter of Father's telephone visitation to the magistrate for a hearing to be attended by all parties for the ultimate purpose of ensuring that the children would be available for Father's calls. The court informed Father that pursuant to R.C. 2151.352, he had a right to appointed counsel on matters involving visitation and that the court would appoint counsel upon his request pursuant to Loc.R. 8.02(A).

{¶20} After resolving Father's objections, the juvenile court ordered remand to the magistrate to address the visitation issue, appointment of counsel for Father upon his request pursuant to Local Rule, that Father be made available to attend any future hearing via video, and that all prior orders not in direct conflict remained in full force and effect. The juvenile court ordered that any party may appeal its judgment to this appellate court within 30 days.

{¶21} Father moved the juvenile court for appointment of appellate counsel for purposes of a direct appeal. He filed a timely appeal in which he raises six assignments of error for review. This Court consolidates the assignments of error to facilitate discussion.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT ALLOWED [FATHER'S] ATTORNEY TO WITHDRAW.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT PLAINLY ERRED BY NOT APPOINTING NEW COUNSEL TO REPRESENT [FATHER] AFTER HIS ATTORNEY FILE[D] A MOTION TO WITHDRAW.

### ASSIGNMENT OF ERROR III

[FATHER] WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED [FATHER'S] MOTIONS AND OBJECTIONS.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED WHEN IT REFUSED TO HEAR [FATHER'S] MOTIONS VIOLATING HIS FUNDAMENTAL RIGHTS AS A PARENT.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED BY NOT ISSUING ITS JOURNAL ENTRY IN A TIMELY FASHION.

{¶22} Father argues that the juvenile court erred in its rulings relating to various issues. Because Father has not demonstrated that he was aggrieved, this Court declines to address his assignments of error.

{¶23} As an initial matter, we note that Father has not appealed the final custodial disposition of the children. He does not argue that the juvenile court erred by terminating protective supervision and retaining the children in Mother's legal custody. He makes no argument that the final disposition was not in the best interest of the children. In addition, Father never filed a motion or otherwise proposed any particular custodial disposition. Accordingly, he seeks reversal and remand to the juvenile court to address issues ancillary to custodial disposition, not disruption of Mother's legal custody.

{¶24} "An appeal lies only on behalf of the party who is aggrieved by the judgment. The sole purpose of an appeal is to provide the appellant an opportunity to seek relief in the form of a correction of errors of the lower court that injuriously affected him." (Internal citations omitted.) *BFG Fed. Credit Union v. CU Lease, Inc.*, 9th Dist. Summit No. 22590, 2006-Ohio-1034, ¶ 36. "[T]he test of the right to appeal lies in whether or not one is an 'aggrieved' party – a party who has suffered some loss." *Warren v. Cincinnati*, 113 Ohio App. 254, 257 (1st

Dist.1959). "The burden is on the appellant to establish that he is an aggrieved party whose rights have been adversely affected by the trial court's judgment." *State v. Senz*, 9th Dist. Wayne No. 02CA0016, 2002-Ohio-6464, ¶ 5.

{¶25} In this case, Father did not initially have contact with or the ability to seek information about the children the entire time he was in prison. Moreover, he was subject to a child support order and continued to accrue arrearages during his incarceration. Over the course of the case below, however, he obtained court-ordered telephone visitation, an order of access to the children's school and medical records, and a reduction to $0 for his monthly child support obligation. Accordingly, solely as a result of the juvenile court proceedings, Father obtained parental rights and benefits he had heretofore been unable to exercise, whereas he suffered no loss or limitations on any parental rights during the course of the litigation. Furthermore, given his incarceration throughout the duration of the case, he would not have been able to obtain custody or in-person visitation with the children. Accordingly, given the lack of disruption of the children from the home and Mother's fulfillment of her case plan objectives, it is hard to imagine how Father might have obtained any greater success in this case. Under these circumstances, this Court concludes that none of the errors complained of by Father injuriously affected him or caused him to suffer any loss, thereby negating his ability to obtain relief. *See BFG Fed. Credit Union* at ¶ 36. In fact, Father can be said to have only realized significant benefits as a result of this case below. As Father is not an aggrieved party, no appeal lies and this Court is precluded from considering his assigned errors.

Appeal dismissed.

———

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.